1

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

2

3

4

5

6

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

7

8

9

*Attorneys for Plaintiff*

10

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

**SAN FRANCISCO DIVISION**

14

15

| | |
|---|---|
| ROLANDO MARTINEZ, individually and on behalf of all others similarly situated, | Case No. 3:19-cv-05479-WHO |
| Plaintiff, | **CLASS ACTION** |
| vs. | **FIRST AMENDED COMPLAINT FOR:** |
| BMW OF NORTH AMERICA, LLC, and DOES 1 through 10, inclusive, | **(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.;* **and,** |
| Defendants. | **(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.* |
| | **JURY TRIAL DEMANDED** |

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff ROLANDO MARTINEZ ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant BMW of North America, LLC ("Defendant" or "BMW"), upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

**INTRODUCTION**

1.      This consumer class action arises out of BMW's failure to properly identify all "high-priced warranted parts" that should be covered under California's 7-year 70,000-mile emissions control warranty.   As a result, Plaintiff and members of the Class and Subclass are paying out of pocket for repairs that should be covered under warranty.

2.      BMW has unilaterally limited the parts that should be covered under the emissions warranty for 7-years and 70,000 miles, including the parts specifically identified by Plaintiff, in order to minimize BMW's warranty exposure.

3.      By not comprehensively identifying all of the parts that should be included as "high-cost" warranty parts, BMW is able to limit the warranty coverage for those parts to only 3-years and 50,000 miles.

4.      Plaintiff seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-years and 70,000-mile emissions warranty for high-priced parts and an injunction to compel BMW to properly identify all high-priced warranty parts.

**BACKGROUND**

5.      For decades, BMW has been in the business of importing and distributing BMW vehicles in the State of California, with the intent to sell BMW vehicles to consumers in California. As such, the BMW vehicles have been subject to state and federal regulations regarding both emissions standards and regarding BMW's obligations to provide consumers with warranties relating to emissions parts.

6.      Specifically, dating back over 20 years, California Code of Regulations, Title 13, Section 2035, *et seq.*, entitled "Emission Control System Warranty Requirements for 1990 and

Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required BMW to identify to the California Air Resources Board ("CARB") the vehicle parts that are "high-priced" "warranted parts" and has required BMW to provide a 7-year 70,000-mile warranty to California consumers relating to "high-priced" "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty." California's stringent emissions rules require automakers to provide longer warranties and cover more items in order to identify malfunctioning emission control components and encourage repair to ensure emission control systems continue to function as designed.  In essence, the regulations are designed to further the State of California's (and Sacramento-based CARB's) strong interest in ensuring that emissions from vehicles in California remain low.

7.     The CCR very clearly defines the methodology that BMW is required to use in order to identify which parts should be covered by the 7-year 70,000-mile warranty.

8.     Pursuant to CCR Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as, "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

9.     Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board

1     diagnostic malfunction indicator light to illuminate, for a period of three years or

2     50,000 miles, whichever first occurs; and

3       (3)     Free from defects in materials and workmanship which cause the failure of a

4     warranted part described in section (c) below for seven years or 70,000 miles,

5     whichever first occurs."

6       10.     California Code of Regulations Section 2037(c) deals with "high-priced

7 warranted parts" under the California Emission Control System Warranty and states:

8       (1)     Each manufacturer shall identify in its application for certification the "high-

9     priced" warranted parts which are:

10         (a)     For 1990 through 2007 model year vehicles: [i] included on the Board's

11         "Emissions Warranty Parts List" as last amended February 22, 1985,

12         incorporated herein by reference, and; [ii] have an individual replacement

13         cost at the time of certification exceeding the cost limit defined in section

14         (c)(3);

15         (b)     For 2008 and subsequent model year vehicles: [i] subject to coverage as a

16         warranted part in section (b)(2) above, and; [ii] have an individual

17         replacement cost at the time of certification exceeding the cost limit

18         defined in section (c)(3).

19       (2)     The replacement cost shall be the retail cost to a vehicle owner and include the

20     cost of the part, labor, and standard diagnosis. The costs shall be those of the

21     highest-cost metropolitan area of California.

22       (3)     The cost limit shall be calculated using the following equation:

23     Cost limit {n)} = $300 x (CPI{n-2}]/ 118.3

24     Cost limit {n) is the cost limit for the applicable model year of the vehicle

25     rounded to the nearest ten dollars.

26       11.     In summary, any part that either effects a vehicle's emissions, or causes a

27 vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

28

determining coverage under the CCR, considered a "warranted part." If a part is a "warranted part," the part shall have a 3-year 50,000-mile warranty.

12.     However, if the part is determined to be a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

**BMW'S CONDUCT**

13.     At all times herein relevant, for each new motor vehicle intended to be distributed by BMW in the State of California, at the time of distribution, BMW has purported to identify to CARB and consumers the parts that should be covered under the 7-year 70,000-mile California emissions warranty.

14.     Furthermore, at all times herein relevant, for each new vehicle intended to be distributed by BMW in the State of California, at the time of distribution, BMW has purported to provide accurate written warranty documents with the vehicle, including in the BMW warranty booklet distributed to owners and lessees at all BMW factory authorized dealerships throughout California at the time of sale or lease, and in resources provided to all off its BMW factory authorized dealerships throughout California, which purport to accurately identify all of the vehicle parts that are covered under the 7-year 70,000-mile California emissions warranty.

15.     BMW has engaged in a systematic business practice of omitting from the BMW warranty booklet provided to owners and lessees at all of its dealerships statewide, and in resources provided by BMW to all of its dealerships statewide, both at the time of sale or lease and afterwards, all of the parts that should be identified as "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  BMW classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty, but not all of the high-priced warranted parts that should be covered under the 7-year 70,000-mile California emissions warranty.

16.     Thereafter, when BMW vehicles are presented by consumers to BMW authorized repair facilities throughout California for repair, BMW fails to provide coverage under the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under the 7-year 70,000-mile California emissions warranty.

17.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by BMW.

18.     BMW engages in the alleged misconduct in order to reduce the amount of money that BMW has to pay out on warranty-related repairs and warranty claims.

19.     If BMW properly identified all of the high-priced warranted parts that should be correctly identified as such, then BMW dealerships would properly provide coverage for said high-priced parts under warranty.

20.     The failure by BMW to properly identify parts as "high-priced" warranted parts under the CCR violates the UCL and CLRA and has the intended effect of minimizing the amount of money that BMW has to pay out in warranty claims.  This conduct violates California law.

21.     Plaintiff and other consumers have suffered damage and lost money or property as a result of BMW's wrongful conduct.

22.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that BMW submitted, or that CARB ever expressed a concern about BMW's classification of components as high-priced parts.  Plaintiff is not accusing CARB of mismanagement or blaming CARB for BMW's inaccuracy.  BMW alone is responsible for selecting and identifying to CARB the parts that BMW has unilaterally identified as "high-cost emissions warranty parts" as part of its application for vehicle certification.  That list may be correct as far as it goes or as far as CARB may know.  But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

**JURISDICTION AND VENUE**

23.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state

different from that of Defendant BMW; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) BMW is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

24.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

25.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District. On information and belief, BMW has 11 factory authorized sales and service locations in the Northern District.[1]  BMW's Group Technology Office USA, which is located at 2606 Bayshore Parkway, Mountain View, California 94043, is where researchers "concentrate preliminarily on Sustainability" and work "to ensure that BMW remains at the forefront of global trends and technology," which "includes but isn't limited to [ ] battery technology and powertrain topics."[2]  On information and belief, the BMW Group Technology Office USA was involved in decisions relating to vehicle emissions, including but not limited to the functioning of components such as turbo coolant lines which are part of the powertrain in Plaintiff's vehicle.

## PARTIES

26.     Plaintiff Rolando Martinez is, and at all times relevant hereto has been, a resident and citizen of the State of California.

---

[1] *See* https://www.bmwusa.com/dealer-locator.html, last visited November 12, 2019.
[2] *See* https://www.bmwgroup.jobs/us/en/location/location-silicon-valley.html#ace-1688004707, last visited Nov. 12, 2019.

27.     BMW was and is, upon information and belief, a New Jersey limited liability company doing business in California.

28.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

29.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of BMW at all relevant times.

30.     Plaintiff is informed and believes, and on that basis alleges that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary.  Each reference in this Complaint to "BMW" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

31.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

### PLAINTIFF'S FACTS

32.     On February 22, 2015, Plaintiff purchased a used 2012 BMW 750i, VIN WBAKA8C51CDX01183 ("Martinez Vehicle") from CarMax Auto Superstores California, LLC (the "CarMax Dealership") located in San Bernardino County, California.

33.     At the time that Plaintiff purchased the Martinez Vehicle, the Martinez Vehicle was still covered by the remainder of the Martinez Vehicle's California emissions warranty.

34.     In February of 2016, at 61,931 miles, the Martinez Vehicle underwent repairs at a BMW factory authorized repair facility. The repair visit occurred because Plaintiff had previously presented the Martinez Vehicle to a BMW authorized repair facility for repairs. The

earlier repairs had been paid for by BMW under a "Customer Care Package," designed to address issues relating to the fuel ignition in Plaintiff's model vehicle.

35.     However, ever since the repairs relating to the Customer Care Package were conducted, a strong fuel odor continued to emanate from the Martinez Vehicle.

36.     During the February 2016 repair visit, the factory authorized repair facility determined that the strong fuel odor was the result of a leak from the tank's fuel feed line to the fuel rail. The factory authorized repair facility performed the repairs. These repairs were not paid for under the BMW emissions warranty. Plaintiff paid $619.47, plus tax out of pocket for these repairs.  Invoice 386624 was generated relating to this repair visit.

37.     On October of 2016, at 68,699 miles, the Martinez Vehicle again underwent repairs at a BMW factory authorized repair facility. The factory authorized repair facility determined that coolant was leaking from the Martinez Vehicle's turbo coolant lines. The factory authorized repair facility generated Invoice 422348 relating to this repair visit. These repairs were not paid for under the BMW 7-year 70,000-mile California emissions warranty. Plaintiff paid $1,902.22, plus tax out of pocket for these repairs. Invoice 422348 was generated relating to this repair visit.

38.     The cost associated with the diagnosis and repairs relating to Invoices 386624 and 422348 should have been covered and paid for by BMW under the 7-year 70,000-mile California emissions warranty because, pursuant to California Code of Regulations section 2037(c), the parts relating to said repairs should have been identified by BMW as high-priced warranted parts, due to the costs associated with the parts and labor relating to diagnosing the failure and replacing said parts.

39.     The details of how BMW applied the CCR formula with respect to the turbo coolant lines are exclusively within BMW's possession.  Similarly, the information regarding what other parts satisfied the CCR requirements but were not identified by BMW as high-priced emissions warranted parts also are in the exclusive possession of BMW.

40.     The reason that Plaintiff was charged for said repairs was not the result of an individual issue relating only to the factory authorized Dealership at which he purchased and

serviced his vehicle, or an oversight by the factory authorized Dealership in failing to identify the repairs as repairs that should have been covered under the 7-year 70,000-mile California emissions warranty.  Rather, Plaintiff was charged for said repairs because of BMW's uniform and systematic business practice of intentionally refusing to identify in the BMW warranty booklet at all of its dealerships statewide, and in resources provided to all of its dealerships statewide, all of the parts that should be identified as high-priced warranted parts under California law in order to limit the amount of warranty claims paid by BMW.

41.     CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires BMW to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

42.     BMW intentionally failed to identify all said components in order to reduce the amount of money that BMW spends on warranty-related repairs.  If BMW complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then BMW dealerships would properly provide warranty coverage for said high-priced warranted parts.

43.     BMW's conduct violates California's unfair business statute, California Business and Professions Code section 17200, *et seq*. (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq*.

44.     Plaintiff, and other members of the Class have suffered damage as a result of BMW's wrongful conduct.

45.     On February 18, 2019, pursuant to California Civil Code Section 1782, counsel for Plaintiff sent BMW a letter, notifying BMW in writing of Plaintiff's claims under the Consumers Legal Remedies Act relating to said BMW Warranty concealment. Said letter provided BMW with an opportunity to take actions to remedy said unlawful practices. Specifically, the letter indicated that BMW wrongfully failed to identify the turbo coolant lines relating to Plaintiff's vehicle as being a high-priced emissions part, having a 7-year 70,000-mile California emissions warranty, and failed to provide said coverage. BMW refused to take any actions to remedy said unlawful practices.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

47.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of himself and members of the Class as defined below.

48.    Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

49.    All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

50.    Plaintiff's proposed class consists of and is defined as follows:

> All persons in California who, within the last four years, have been owners or lessees of BMW vehicles and who have paid for repairs and parts that should have been covered under BMW's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Class").

51.    Plaintiff's proposed subclass consists of and is defined as follows:

> All persons in California who are, or have been, owners or lessees of 2012 BMW 750i vehicles and who have paid for repairs and parts for the turbo coolant lines.

52.    On behalf of the Class and Subclass, Plaintiff seeks injunctive relief requiring BMW to identify all of the parts or components that should have been, and that should be, properly covered under the 7-year or 70,000-mile California Emission Control System Warranty.

53.    On behalf of the Class and Subclass, Plaintiff also seeks reimbursement for the money wrongfully paid by Plaintiff and members of the Class relating to repairs that should have been covered by BMW under the 7-year 70,000-mile California Emission Control System Warranty during the Class period.

54.    Plaintiff reserves the right to redefine the Class and Subclass and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

55.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members.  Among the common questions of law and fact include:

(a)     Whether BMW has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile California emissions warranty for all parts that are defined as high-priced warranted parts pursuant to the CCR.

(b)     Whether BMW has failed, and is failing, to identify for consumers and dealerships all of the parts that should be identified as high-priced warranted parts, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(c)     Whether BMW has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR.

(d)     Whether BMW has failed, and is failing, to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that BMW spends on warranty-related repairs.

(e)     Whether BMW's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty causes consumers to suffer financial loss.

(f)     Whether BMW's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in wrongfully minimizing the amount of money that BMW has to pay out in warranty claims.

(g)     Whether BMW's conduct of failing to identify all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether BMW has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.* with regard to BMW's failure to identify all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiff and Class members are entitled to injunctive relief regarding BMW's failure to identify all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)     The appropriate amount of restitution, or monetary damages resulting from BMW's violations of California law.

(k)     Whether BMW has engaged in, and is engaging, in concealment relating to BMW's failure to identify all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(l)     Whether BMW has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*, with regard to BMW's failure to identify all of the high-priced warranted parts which should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

56.     <u>Numerosity</u>:  As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.   The membership of the entire Class is unknown to Plaintiff at this time;

however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

57.     Typicality:  As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all Class members since Plaintiff and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

58.     Adequacy:  As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion.

59.     Superiority:  As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire Class.

60.     Defendant keeps extensive computerized records of its customers.  Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

61.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

62.     BMW has actively engaged in misleading and dishonest conduct relating to its failure to properly identify parts that should be identified as high-priced warranted parts covered under the 7-year 70,000-mile California emissions warranty.  Despite acting diligently, Plaintiff

and the Class cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced warranted parts covered under the 7-year 70,000-mile California emissions warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and members of the Class, and the statute of limitations for bringing the claims set forth herein should be tolled.

63.     BMW has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be identified as high-priced warranted parts, and by failing to provide a 7-year 70,000-mile California emissions warranty relating to said parts. BMW has concealed from Plaintiff and members of the Class that BMW is violating California law as set forth herein.

64.     Any applicable statute of limitation is tolled by BMW's knowledge, active concealment, and wrongful conduct set forth herein.  BMW is further estopped from relying on any statute of limitation because of its concealment set forth herein.

## FIRST CLAIM FOR RELIEF

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

65.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

66.     California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  BMW has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

67.     The UCL imposes strict liability.  Plaintiff need not prove that BMW intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

68.     BMW is a "person" as defined by Business & Professions Code § 17201.

69.     As a direct and proximate result of BMW's acts and practices in violation of the UCL, Plaintiff and members of the Class who have wrongfully been denied warranty coverage at each of BMW's factory authorized service centers throughout California, and at authorized

third-party repair centers, have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

70.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

71.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

72.     BMW's conduct is unlawful in that it violates the CCR, including the requirement under CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" that BMW identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

73.     BMW's conduct violates CCR section 2037(c)(1)(B) because BMW fails to identify all of the high-priced warranted parts as parts that should be covered under the 7-year 70,000-mile California emissions warranty.

74.     BMW's conduct also violates the unlawful prong in that BMW has violated the CLRA as further alleged below.

75.     BMW's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

### Unfair Prong

76.     An act or act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.   BMW's conduct satisfies all of these definitions.

77. As alleged above, BMW engages and has engaged in a systematic business practice of intentionally failing to identify in the BMW warranty booklet at the time of distribution at all of its dealerships throughout California, and in resources provided to all of its dealerships statewide, numerous parts that BMW is obligated to identify as high-priced warranted parts by operation of law. BMW does this in an effort to reduce the amount of money that BMW spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If BMW complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then BMW dealerships would properly provide warranty coverage for said high-priced warranted parts.

78. Further, BMW's conduct is unfair because it intentionally refuses to provide warranty coverage for all high-priced emissions parts for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that members of the public are being forced to pay for repairs which should be covered under the 7-year 70,000-mile California emissions warranty. Plaintiff and members of the Class have wrongfully been denied warranty coverage at each of BMW's factory authorized service centers throughout California, and at authorized third-party repair centers, and have suffered injury in fact and a loss of money or property as a result of BMW's unfair business acts and practices as set forth in detail.

79. The failure on the part of BMW to properly identify all parts as high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional statewide business practice on the part of BMW to minimize the amount of money that BMW has to pay out in warranty claims. This conduct violates California law.

80. All of the acts and practices of BMW as described in this Complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff and members of the Class have suffered injury in fact and a loss of money or property as a result of BMW's unfair business acts and practices as set forth in detail herein.

81.    As a direct and proximate result of BMW's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace high-priced warranted parts that should have been covered by BMW under the 7-year 70,000-mile California emissions warranty.  Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

82.    BMW's conduct does not benefit consumers or competition. Plaintiff and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial.  BMW's conduct only benefits BMW, by BMW wrongfully avoiding having to pay warranty claims which should be covered by the 7-year 70,000-mile California emissions warranty.

83.    The gravity of the consequences of BMW's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

84.    BMW's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

85.    To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to BMW's justification and motives for its conduct, and as to the impact of BMW's conduct on Plaintiff and Class members.

86.    BMW's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**Fraudulent Prong**

87.    BMW engages in a uniform and systematic business practice of intentionally failing to identify in the BMW warranty booklet, at the time of distribution at all of its dealerships throughout California, and in resources provided to all of its dealerships statewide, all parts that should be identified as high-priced warranted parts. BMW does this in an effort to

intentionally conceal the identity of all of the parts which should be covered under the 7-year 70,000- mile California emissions warranty for high-priced emissions parts, intentionally mislead consumers with regard to what parts are covered under the 7-year 70,000- mile California emission warranty for high-priced parts, and reduce the amount of money that BMW spends on warranty related repairs. As warranted parts necessary for the operation of the vehicles, the parts that BMW failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation.  If BMW complied with California law, and properly identified all parts as high-priced warranted parts which should be identified as such, then BMW dealerships would properly provide warranty coverage for said high-priced warranted parts.

88.     BMW**'s** failure to properly identify all parts as high-priced warranted parts which should be identified as such, is a statewide systematic and intentional business practice on the part of BMW to minimize the amount of money that BMW has to pay out in warranty claims. This conduct violates California law.

89.     Said conduct is likely to deceive an ordinary consumer as BMW concealed from consumers and from each of BMW's dealerships statewide all of the high-priced warranted parts, in an effort by BMW to minimize the amount of money that BMW has to pay out in warranty claims. One of the ways BMW misleads consumers relates to the information that BMW provides to consumers in the Passport to Service. BMW intentionally omits information from the warranty booklet by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year 70,000-mile California emissions warranty.

90.     In evaluating the repair costs to be charged, Plaintiff justifiably relied on the information in the warranty booklet about the parts covered under the high-cost emissions warranty and was deceived and suffered damage as a result of BMW's intentional, wrongful and fraudulent conduct.

91.     BMW is fully aware of its obligations pursuant to the CCR and purports to comply with them.  However, in derogation if its legal obligations, BMW willfully and

intentionally conceals from consumers, and from the BMW dealerships, all of the parts that should be covered as high-priced warranted parts pursuant to the California emissions warranty, in order to reduce the amount of money that BMW has to pay in warranty claims.

92.     BMW is and was under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year 70,000-mile California emissions warranty because CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires BMW to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

93.     BMW is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year 70,000-mile California emissions warranty because:

(1)     BMW is and was in a superior position to know the true state of facts about the duration of the 7-year 70,000-mile California emissions warranty and which parts should be covered as high-priced warranted parts;

(2)     BMW has made partial disclosures about the extent of the 7-year 70,000-mile California emissions warranty;

(3)     BMW has actively concealed and failed to identify all of the parts that are covered under the 7-year 70,000-mile California emissions warranty; and,

(4)     Members of the Class, including Plaintiff, have suffered actual loss due to BMW's concealment and false representations.

94.     The facts concealed and not disclosed by BMW to Plaintiff and members of the Class are material.  Had Plaintiff and members of the Class known the true extent of the 7-year 70,000-mile California emissions warranty, and had BMW been truthful to its dealerships and members of the Class with regard to identifying all of the parts and repairs that are covered under the 7-year 70,000-mile California emissions warranty, Plaintiff and members of the Class would have been able to avoid spending money in order to repair BMW vehicles sold and leased in California. As a result, Plaintiff and members of the Class have suffered damage.

FIRST AMENDED CLASS ACTION COMPLAINT

95. BMW continues to conceal the extent of the 7-year 70,000-mile California emissions warranty in order to minimize the amount of money that BMW spends on warranty related repairs.

96. Furthermore, BMW has refused to, and continues to refuse to provide 7-year 70,000-mile California emissions warranty coverage relating to all repairs which should be covered under said warranty pursuant to California law. This refusal is intentional, willful, unfair, and unlawful.

### SECOND CLAIM FOR RELIEF

### Violation of California Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750, *et seq.*)

97. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

98. BMW has violated Section 1770 of the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"). The violation is that BMW promised both the State of California, and members of the Class, including Plaintiff, that it would honor the terms of the BMW warranty, and by doing so, that it would honor the terms of the CCR, however BMW has failed to do so. Furthermore, the warranty book provided by BMW to consumers specifically references the California emissions warranty, and both inferentially and specifically represents that it will honor the terms of the CCR, however BMW has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

99. Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by BMW pursuant to the CCR. The Martinez Vehicle was presented by Plaintiff for repairs at a BMW authorized repair facility, in compliance with the terms and conditions of the BMW warranty. The Martinez Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Martinez Vehicle's mileage and age. BMW wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

100. BMW knows that it is violating the terms of the CCR, however BMW intentionally violates the CCR in order to save money. Plaintiff and members of the Class are

generally unaware of the terms and scope of the CCR, thus BMW is able to get away with said wrongful conduct. As result, Plaintiff and members of the Class have suffered damage. BMW engages in a systemic pattern of denying warranty claims under the CCR relating to high-priced warranted parts.

101.   Plaintiff and members of the Class have presented BMW vehicles to BMW authorized repair facilities for repairs that should have been covered under the CCR, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Class have thus suffered damage. Plaintiff brings this claim on behalf of himself and the Class.

102.   BMW's conduct in warranting, advertising, leasing, selling and distributing vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)   BMW represents and has represented that the vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)   BMW has falsely represented that the vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)   BMW advertised the vehicles that have been sold and leased in the State of California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

103.   Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

104.   Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

105.   Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

1   106.   Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code section

2   1780(e).

### PRAYER FOR RELIEF

4   WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for

5   relief and judgment against BMW as follows:

6   1.   Plaintiff, on behalf of himself, and members of the Class and Subclass, request

7   that the Court enter judgment against BMW as follows:

8   (a)   An order certifying the proposed Class designating Plaintiff as named

9   representative of the Class, and designating the Plaintiff's Counsel as Class Counsel;

10   (b)   A declaration that BMW is financially responsible for notifying all

11   members of the Class about the wrongful conduct set forth herein;

12   (c)   An order enjoining BMW from further deceptive distribution, sales, and

13   lease practices, and to reimburse both Plaintiff and members of the Class for the money

14   wrongfully paid by Plaintiff and members of the Class relating to repairs which should have

15   been covered by BMW under the 7-year 70,000-mile California emissions warranty;

16   (d)   An award to Plaintiff and members of the Class of compensatory,

17   exemplary, and statutory damages, including interest, in an amount to be proven at trial;

18   (e)   An award to Plaintiff and members of the Class of any repair costs they

19   are owed;

20   (f)   A declaration that BMW must disgorge, for the benefit of the Class, all

21   or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein,

22   or make full restitution to Plaintiff and members of the Class;

23   (g)   An award of attorneys' fees and costs, as allowed by law;

24   (h)   An award of pre-judgment and post-judgment interest;

25   (i)   Leave to amend the Complaint to conform to the evidence produced at

26   trial; and

27   (j)   Other relief as may be appropriate under the circumstances.

28   ///

1

**DEMAND FOR JURY TRIAL**

2

   Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial

3

by jury as to all claims so triable.

4

5

Dated: November 12, 2019     Respectfully submitted,

6

              **POMERANTZ LLP**

7

              **THE LAW OFFICE OF ROBERT STARR**

8

9

         By: _____

             Jordan L. Lurie

10

             Ari Y. Basser

             Robert. L. Starr

11

12

            *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28